Dorinda C. Bordlee
Louisiana State Bar No. 20115
**LAW OFFICES OF DORINDA C. BORDLEE**
3312 Cleary Avenue
Metairie, LA 7002
Phone: (504) 454-8760
Facsimile: (504) 454-7175

J. Michael Johnson
Louisiana State Bar No. 26059
*ALLIANCE DEFENSE FUND*
Southeast Regional Service Center
401 Market Street, Ste. 900
Shreveport, LA 71101
Phone: (318) 459-2239
Facsimile: (318) 222-0458

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2004 SEP 17  PM 1: 16

LORETTA G. WHYTE
CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

|   |   |
|---|---|
| JOHN B. WELLS | Case No. **04-2585** |
| Plaintiff, | **SECT. R MAG. 5** |
| v. | **APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION** |
| HARRY S. HARDIN, III., Chair, Louisiana Judicial Campaign Oversight Committee, in his official and individual capacity, | **EXPEDITED CONSIDERATION REQUESTED** |
| Defendant. |   |

PLEASE TAKE NOTICE that the Plaintiff, by counsel, hereby applies for a
Temporary Restraining Order, under Fed. R. Civ. P. 65 and L.R. 65(b) restraining
Defendant and all persons acting at Defendant's behest or direction, including his
officers, agents, servants, and employees, from continuing to unconstitutionally restrict
Plaintiff's speech during his primary and general election campaign for Judge of the
Slidell City Court for a period of 10 days, if granted *ex parte*, or 20 days, if the

DATE OF ENTRY

SEP 21 2004

Fee_____
Process_____
X  Dktd_____
CtRmDep_____
Doc. No._____

Defendant appears at the hearing.   Additionally, Plaintiff hereby moves for a Preliminary Injunction, under Fed. R. Civ. P. 65, and similarly restraining Defendant, for a period of time running from the expiration of the Temporary Restraining Order to such time as this Court definitively rules on the merits of this action.   Plaintiff hereby requests that bond be waived or nominal bond be required.

As grounds for this Application and Motion, Plaintiff would show:

1.   Pursuant to Fed. R. Civ. P. 65, Plaintiff has notified Defendant of his intention to apply for a Temporary Restraining Order and move for a Preliminary Injunction, both orally and in writing, as set forth in the concurrently filed Certification by Dorinda C. Bordlee of Attempts to Notice Defendant of Application for Temporary Restraining Order.

2.   Pursuant to L.R. 65(b) Plaintiff conferred with Defendant's counsel by telephone on Monday, September 13, 2004.   Defendant opposes this Application and Motion as of the date this document was signed.

3.   The grounds for this Application and Motion are set forth in the Memorandum in Support of Plaintiff's Application for Temporary Restraining Order and Motion for Preliminary Injunction.

4.   In support of this Application and Motion, Plaintiff also relies on Plaintiff's Verified Complaint for Declaratory and Injunctive Relief and Damages, filed with this Court on Friday, September 17, 2004, and the concurrently filed Declaration of John B. Wells in Support of Plaintiff's' Motion for a Temporary Restraining Order and Preliminary Injunction.

5.   Pursuant to L.R. 65(b) Plaintiff certifies that expedited consideration is warranted.   The continued unconstitutional restriction on Plaintiff's free speech during his primary and general election campaign for Judge of the Slidell City Court is *per se*

and unequivocally irreparable injury and inaction would drastically hinder Plaintiff's

election bid and render his constitutional rights to free speech meaningless.

Respectfully submitted this 17th day of September, 2004.

_____
Dorinda C. Bordlee
Louisiana State Bar No. 20115
LAW OFFICES OF DORINDA C. BORDLEE
3312 Cleary Avenue
Metairie, LA 7002
Phone: (504) 454-8760
Facsimile: (504) 454-7175

J. Michael Johnson
Louisiana State Bar No. 26059
ALLIANCE DEFENSE FUND
Southeast Regional Service Center
401 Market Street, Ste. 900
Shreveport, LA 71101
Phone: (318) 459-2239
Facsimile: (318) 222-0458

Dorinda C. Bordlee
Louisiana State Bar No. 20115
LAW OFFICES OF DORINDA C. BORDLEE
3312 Cleary Avenue
Metairie, LA 7002
Phone: (504) 454-8760
Facsimile: (504) 454-7175

J. Michael Johnson
Louisiana State Bar No. 26059
ALLIANCE DEFENSE FUND
Southeast Regional Service Center
401 Market Street, Ste. 900
Shreveport, LA 71101
Phone: (318) 459-2239
Facsimile: (318) 222-0458

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

JOHN B. WELLS                                    Case No.

        Plaintiff,

                             **TEMPORARY RESTRAINING ORDER**

v.

HARRY S. HARDIN, III., Chair, Louisiana
Judicial Campaign Oversight Committee, in
his official and individual capacity,

        Defendant.

Upon this Court's thorough review of the Plaintiff's Application for Temporary Restraining Order and Motion for Preliminary Injunction, pursuant to Fed. R. Civ. P. 65, the supporting memorandum of law, and with full consideration of all matters brought before this Court regarding the motion, Plaintiff's Application for Temporary Restraining Order, the Court finds that:

1.     Defendant, by counsel, received notice of the date and time of the hearing on

Plaintiff's Application for a temporary restraining order and appeared and was heard at the hearing;

2.     The Court has received evidence documenting to its satisfaction that absent the issuance of a temporary restraining order, the Plaintiff will suffer immediate and irreparable harm during the period necessary to conduct a hearing on a preliminary injunction; and good cause shown, IT IS ORDERED AND ADJUDGED:

1.     That Plaintiff's Application for a Temporary Restraining Order is granted as provided herein.

2.     That Defendant is to cease and desist from restricting Plaintiff's speech as it relates to expressing his opinions on being "pro-life" and "pro-marriage" and to expressing the fact a complaint has been filed against him for his campaign speech during the remainder of the primary and general campaign for election as Slidell City Judge;

3.     That Defendant is enjoined from restricting Plaintiff's speech as it relates to expressing his opinions on being "pro-life" and "pro-marriage" and to expressing the fact that a complaint has been filed against him regarding his campaign speech during the remainder of the primary and general campaign as Slidell City Judge;

4.     That this Temporary Restraining Order shall remain in effect until such time as the Court dissolves it or grants Plaintiff's motion for preliminary injunction or other requested remedial relief;

5.     That this Order shall be binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with Defendant who receive actual notice of the Order by personal service or otherwise;

6.     That the requirement that the giving of security be waived;

7.   That Plaintiff's Motion for Preliminary Injunction shall be set for hearing

on _____, 2004 at _____ o'clock [a.m.] [p.m.].

Dated this _____ 17th _____ day of September, 2004.

_____

UNITED STATES DISTRICT JUDGE

Dorinda C. Bordlee
Louisiana State Bar No. 20115
LAW OFFICES OF DORINDA C. BORDLEE
3312 Cleary Avenue
Metairie, LA 70002
Phone: (504) 454-8760
Facsimile: (504) 454-7175

J. Michael Johnson
Louisiana State Bar No. 26059
ALLIANCE DEFENSE FUND
Southeast Regional Service Center
401 Market Street, Ste. 900
Shreveport, LA 71101
Phone: (318) 459-2239
Facsimile: (318) 222-0458

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

JOHN B. WELLS

          Plaintiff,

v.

HARRY S. HARDIN, III., Chair, Louisiana
Judicial Campaign Oversight Committee, in his
official and individual capacity,

          Defendant.

Civil No.

**MEMORANDUM OF LAW IN SUPPORT
OF
PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING
ORDER/MOTION FOR PRELIMINARY
INJUNCTION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ 2

INTRODUCTION ............................................................................................................. 4

ISSUES PRESENTED ...................................................................................................... 5

STANDARD OF REVIEW ................................................................................................ 5

ARGUMENT .................................................................................................................... 6

I.      LIKELIHOOD OF SUCCESS ON THE MERITS ........................................................ 6

        A.      Plaintiff's Expression is Protected by the First Amendment ...................... 6

                1.  Canon 7's "Commit Clause" violates the First Amendment ..................... 6

                2.  Rule VIII's "Gag Rule" violates the First Amendment ............................ 9

        B.      The Ordinances Impose Unconstitutional Prior Restraints ...................... 12

        C.      The Ordinances are Unconstitutionally Overbroad .................................. 12

        D.      The Ordinances are Unconstitutionally Vague ........................................ 14

II.     THE PLAINTIFF IS SUFFERING IRREPARABLE INJURY ...................................... 15

III.    THE THREATENED INJURY TO PLAINTIFFS OUTWEIGHS THE
        THREATENED HARM THE INJUNCTION MAY DO TO DEFENDANTS .............. 16

IV.     GRANTING A PRELIMINARY INJUNCTION WILL NOT DISSERVE
        THE PUBLIC INTEREST ........................................................................................ 16

CONCLUSION ................................................................................................................ 16

## TABLE OF AUTHORITIES

## CASES

Beckerman v. City of Tupelo
  664 F. 2d 502 (5th Cir. 1981) ................................................................. 13

City of Houston v. Hill
  482 U.S. 451 (1987) .............................................................................. 12

City of Lakewood v. Plain Dealer Publ'g Co.
  486 U.S. 750 (1988) .............................................................................. 15

Connally v. General Constr. Co.
  269 U.S. 385 (1926) .............................................................................. 14

Doe v. Doe
  127 S.W. 3d 728 (Tenn. 2004) ............................................................. 10-11

Doe v. Supreme Court of Florida
  734 F.Supp. 981 (S.D. Fla. 1981) ........................................................ 11

Elrod v. Burns
  427 U.S. 347 (1976) .............................................................................. 15

Gooding v. Wilson
  405 U.S. 518 (1972) ......................................................................... 12, 13

Grayned v. City of Rockford
  408 U.S. 104 (1972) .............................................................................. 22

Hague v. C.I.O.
  307 U.S. 496 (1939) .............................................................................. 15

Hoffman Estates v. Flipside, Hoffman Estates
  455 U.S. 489 (1982) .............................................................................. 14

Hustler Magazine v. Falwell
  485 U.S. 46 (1988) ................................................................................ 15

Lamb's Chapel v. Center Moriches Union Free School Dist.
  508 U.S. 384 (1993) .............................................................................. 13

Landmark Communications v. Virginia, 435 U.S. 829 (1978) ............................... 10, 11

Members of the City Council of the City of Los Angeles
v. Taxpayers for Vincent
  466 U.S. 789 (1984) .............................................................................. 13

Memphis Community School Dist. v. Stachura
477 U.S. 299 (1986)..................................................................................16

NAACP v. Alabama
377 U.S. 288 (1964)..................................................................................12

NAACP v. Button
371 U.S. 415 (1963)..................................................................................12

O'Conner v. Donaldson
422 U.S. 563 (1975)..................................................................................13

R.A.V. v. City of St. Paul
505 U.S. 377 (1992)..................................................................................13

Republican Party of Minnesota v. White
536 U.S. 765 (2002)..................................................................................7-9

Shamloo v. Mississippi State Bd. of Trustees
620 F.2d 516 (5th Cir 1980).......................................................................6

Shuttlesworth v. City of Birmingham
394 U.S. 147 (1969)..................................................................................15

Simon & Schuster, Inc. v. Members of New York State
Crimes Victims Bd.
502 U.S. 105 (1991)..................................................................................13

Smith v. Phillips
2002 U.S. Dist. LEXIS 14913 (W.D. Tex. Aug. 5, 2002)..........................9

Tinker v. Des Moines Independent Community School District
393 U.S. 503 (1969)..................................................................................16

Thornhill v. Alabama
310 U.S. 88 (1940)....................................................................................12

## STATUTES AND RULES

Cannon 7(B)(1)(d)(ii) of the Louisiana Code of Judicial Conduct ......................... passim

Rule VIII of the Rules and Operating Procedures of the
Louisiana Judicial Campaign Oversight Committee ........................................... passim

## LAW REVIEW ARTICLES

Note, *Should They Stay or Should They Go: The Implications of Republican Party of Minnesota v. White on Restrictions of Speech During Judicial Election Campaigns*, 56 Ark. L. Rev. 677 (2003) ...................................................................................................8

4

## INTRODUCTION

The Plaintiff, judicial candidate John B. Wells, has filed a Verified Complaint for injunctive and declaratory relief.  Plaintiff now seeks an order granting him a temporary restraining order/preliminary injunction, restraining defendant from enforcing *Cannon 7(B)(1)(d)(ii) of the Louisiana Code of Judicial Conduct ("the Commit Clause"), and Rule VIII of the Rules and Operating Procedures of the Louisiana Judicial Oversight Committee ("the Gag Rule")* because they impermissibly restrict free speech, especially in these crucial final days before the September 18, 2004 primary election.  For the reasons set forth below, *the challenged provisions are unconstitutional on their* face and as applied to the plaintiff.

The facts of this case are set forth in the Verified Complaint (See ¶¶ 11-28).  In summary, a complaint was filed against Plaintiff with the Louisiana Judicial Campaign Oversight Committee ("Oversight Committee") *one week before the* primary election by a fervent supporter and cousin of one of Plaintiff's opponents in the race for Slidell City Court judge.  *The complaint alleges that* Plaintiff Wells violated Canon 7(B)(1)(d)(ii) when he stated in his campaign brochure mailer that he is pro-life and that he supports the Defense of Marriage Amendment (See Exhibits C).  The cover letter *to Plaintiff from the Oversight Committee stated that "this complaint, and your response, are* confidential until such time as the Committee, by a vote of *at least two-thirds of its members, has* determined clear and convincing evidence exists that a violation has occurred."

Upon Plaintiff's immediate telephone request to Oversight Committee attorney Tracy Buccino to waive confidentiality so that he could speak about the complaint and his response with voters, Plaintiff was informed that he could not *speak on the matter, except with high-level campaign people*

and legal counsel. Despite repeated requests for amicable resolution by Plaintiff's counsel, Defendant Harry S. Hardin, III, Chair of the Oversight Committee, through counsel Buccino, has continued to restrict and chill Plaintiff's speech on both the "pro-life" and "pro-marriage" content of his campaign message, as well as restricting Plaintiff's right to speak about the complaint against his speech with voters.

## ISSUES PRESENTED

1. Whether Plaintiff John Wells, a judicial candidate for the Saturday, September 18, 2004 Slidell City Court primary race, is entitled to the issuance of a TRO/preliminary injunction restraining the Chair of the Louisiana Judicial Campaign Oversight Committee from enforcing Canon 7(B)(1)(d)(ii) of the Code of Judicial Conduct which violates Plaintiff's freedom of speech by prohibiting judicial candidates from making "statements that commit or appear to commit the candidate with respect to . . . issues that are likely to come before the court" (the "Commit Clause").

2. Whether Plaintiff is entitled to the issuance of a TRO/preliminary injunction restraining the Chair of the Louisiana Judicial Campaign Oversight Committee from his continued unconstitutional enforcement of Rule VIII of the Committee's Rules and Operating Procedures which suppresses free speech by not allowing Plaintiff to voluntarily disclose to voters the filing of a citizen complaint against him, nor to speak about the candidate's response while awaiting "such time as the Oversight Committee decides to issue a public statement."

## STANDARD OF REVIEW

The standard for a preliminary injunction is well established. The plaintiffs must demonstrate:

(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that

the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

Shamloo v. Mississippi State Bd. of Trustees, 620 F2d 516, 523-524 (5th Cir. 1980), quoting Canal Authority of Florida v. Callaway, 489 F.2d 567 (5th Cir. 1974).

## ARGUMENT

## I.   LIKELIHOOD OF SUCCESS ON THE MERITS

### A.   Plaintiff's Expression is Protected by the First Amendment.

#### 1.  Canon 7's "Commit Clause" violates the First Amendment

Canon 7(B)(1)(d)(ii)of the Louisiana Code of Judicial Conduct violates Plaintiff's right to free speech by prohibiting him from discussing "issues" with voters while campaigning for judicial office.  That Canon, attached as Exhibit A of the Verified Complaint and referred to as "the Commit Clause" governs the campaign conduct of judicial candidates and provides as follows:

> (1) A judge or judicial candidate:
> . . . .
> (d) shall not
> (ii) make statements that commit or appear to commit the candidate with respect to cases, controversies, or **issues** that are likely to come before the court.  (emphasis added)

La. Code of Judicial Conduct Canon 7(B)(1)(d)(ii) (2004).

In an opinion issued in June of 2002, the United States Supreme Court invalidated a similar Canon of the Minnesota Code of Judicial Conduct as being a violation of the

7

First Amendment.  In so ruling, the Supreme Court applied strict scrutiny,[1] and rejected Montana's argument that their Canon protected a compelling interest in limiting speech only to the extent necessary to preserve the integrity of democratically elected but independent judiciary.  Republican Party v. White, 536 U.S. 765 (2002).

The facts of *White* are strikingly similar to the facts at issue in this case.  *In White*, a candidate for the Montana Supreme Court distributed literature criticizing several decisions by the court on which he sought a seat as being too liberal on the issues of crime, welfare, and abortion.  A complaint was filed against the candidate under the Minnesota Cannon which provided that a judicial candidate shall not "**announce** his or her views on disputed legal or political issues" (the "announce clause").[2]  Minn. Code of Judicial Conduct, Canon 5(A)(3)(d)(i) (2000).  The Lawyers Board dismissed the complaint, expressing doubt whether the clause could constitutionally be enforced with regard to the charges that his campaign materials violated the "announce clause."

Fearing that further ethical complaints would jeopardize his ability to practice law, the candidate withdrew from the election, only to run two years later for the same seat.  Early in the next race, he filed a lawsuit in federal court seeking, *inter alia*, a declaration that the announce clause violates the First Amendment and an injunction against its enforcement.

Reversing the rulings of the lower courts, the United States Supreme Court held that Minnestoa's announce clause was unconstitutional because it "both prohibits speech on the basis

---

1 Under strict scrutiny, the restrictions placed on an individual's speech will be upheld only if narrowly drawn to achieve a compelling interest.  Untied States v. Grace, 461 U.S. 171, 177 (1983).

2 For an instructive discussion on the similarities between "announce clauses" and "commit clauses," and why both are unconstitutional under the reasoning of *White*, see Note, *Should They Stay or Should They Go: The Implications of Republican Party of Minnesota v. White on Restrictions of Speech During Judicial Election Campaigns*, 56 Ark. L. Rev. 677 (2003).

8

of its content and burdens a category of speech that is 'at the core of our First Amendment freedoms' – speech about the qualifications of candidates for public office." *Id.* at 774 (citation omitted).

The Court clarified that judicial candidates should be impartial and open-minded, not in the sense that he have *no* preconceptions on legal issues, but that he be willing to consider views that oppose his preconceptions and remain open to persuasion when issues arise in a pending case. *Id.* at 778. With that correct understanding of impartiality, the Court cited long-standing case law that "it is simply not the function of government to select which issues are worth discussing or debating in the course of a political campaign." *Id.* at 782. The Minnesota Canon was struck because it failed strict scrutiny.

Statements that reveal the viewpoints and judicial philosophies of a judge are useful to voters in deciding which candidate they want on their bench. Whether the "issue" is crime, or child-support obligations of fathers, or abortion for minors, certain areas of the law do allow for judicial discretion, and a state that chooses to elect its judiciary should also allow its electorate to know whether a particular candidate shares the viewpoints and sensibilities of the electorate. *See* 56 Ark. L. Rev. at 697. Like the announce clause in *White*, Louisiana's commit clause restricts and chills the speech of judicial candidates and deprives the voters of useful information. Considering the wide range of judicially determined social policy, knowledge of a judge's views are essential for voters to make an informed decision.

The Supreme Court's decision in *White* has already resulted in a similar but not identical Canon in Texas' Code of Judicial Conduct to be struck down. The decision in the

9

United States District Court for the Western District of Texas based on *White* found no

distinction between Minnesota's Code of Judicial Conduct Canon 5(A)(3)(d)(i) and Texas's Code

of Judicial Conduct Canon 5(1), which prohibited judges and judicial candidates from "making

statements that indicate an opinion on any issue that may be subject to judicial interpretation by

the office which is being sought or held, except that discussion of an individuals' judicial

philosophy is appropriate if conducted in a manner which does not suggest to a reasonable person

*a probable decision on any particular case,*" thereby deeming the Texas Code to be

unconstitutional.  Smith v. Phillips, 2002 U.S. Dist. LEXIS 14913, *2 (W.D. Tex. Aug. 5, 2002).

In fact, the March 2002 Resolution of the Supreme Court of Louisiana creating the

Judicial Campaign Oversight Committee was enacted by a 4-3 vote, with Justices Johnson and

Traylor dissenting, and Justice Victory dissenting with reasons.  In his dissenting reasons, Justice

Victory stated his "great concerns over the chilling effect such a committee might have on First

Amendment freedoms," and pointed out that at the time the Oversight Committee was created

"there is presently pending before the United States Supreme Court a case that may well affect the

responsibilities given to the committee."  Resolution, Louisiana Supreme Court (March, 13,

2002)(Victory, J., dissenting)(http://www.lasc.org/rules/html/resolution_judcam.htm).

Because the commit clause of Louisiana's Canon 7 unjustly restricts and chills Plaintiff

Wells' speech on important issues during his judicial campaign, his First Amendment rights of free

speech have been unlawfully infringed.

### 2. Rule VIII's "Gag Rule" violates the First Amendment

---

3 The Tennessee gag rule contained a provision that the respondent-attorney could request that the matter be made public at any stage of the proceeding (unlike the Louisiana gag rule which provides no such waiver provision).

Similarly, the "gag rule" of Rule VIII of the Rules and Operating Procedures of the Louisiana Judicial Campaign Oversight Committee also violates Plaintiff Wells' free speech rights. (See Exhibit B of the Verified Complaint). That provision provides that both the complaint and the candidate's response are confidential until such arbitrary time that the Oversight Committee may decide to issue a public statement, *without provision for the respondent candidate's ability to voluntarily waive* confidentiality and speak with voters about the complaint and his response.

In February of 2004, the Supreme Court of Tennessee reviewed the gag rule issue as it applied to reports of attorney misconduct and found that a similar rule cannot survive strict scrutiny. Doe v. Doe, 127 S.W.3d 728 (Tenn. 2004). At issue was the confidentiality provision applicable to attorney disciplinary proceedings as set forth in Tenn. Sup. Ct. Rule 9, section 25 which, like the Louisiana gag rule at issue, provided that all disciplinary proceedings and documents are deemed to be non-public and "shall be kept confidential" until and unless the Disciplinary Board made certain filings for the imposition of public discipline.[3]

The Tennessee Supreme Court cited a long line of case law that demonstrates that "courts have found similar confidentiality provisions to be content-based restrictions." 127 S.W.3d 728, 732 (citations omitted). The Tennessee Supreme Court based much of its decision on Landmark Communications opinion, in which the United States Supreme Court assumed for purposes of decision that the confidentiality provision of Virginia's judicial disciplinary proceedings served *legitimate state interests in protecting the reputation of judges and the judiciary.* However, applying strict scrutiny, the Landmark Communications Court held that "absent exceptional circumstances, reputational interests alone cannot justify the proscription of truthful speech." *Id.* at 134 (*citing* Landmark Communications, Inc. v. Virginia, 435 U.S. 829 (1978)).

Likewise, to the extent that the Louisiana Judicial Campaign Oversight Committee asserts a legitimate interest in reputation in requiring confidentiality under Rule VIII, such interest cannot be recognized as compelling.  As stated by a federal district court in Florida:

> The idea that the suppression of truthful criticism of lawyers would somehow enhance or protect the reputation of the Bar is not persuasive.  To the contrary, continuing the prohibitory effect of the Rule after a grievance against an attorney is found to be meritorious is far more likely to engender suspicion than foster confidence.

Doe v. Supreme Court of Florida, 734 F. Supp. 981, 988 (S.D. Fla. 1981).

Also rejecting the stated interest in protecting anonymity, the Tennessee Supreme Court cited the Supreme Court's *Landmark Communications* decision for the principle that while confidentiality serves a legitimate state interest in encouraging the filing of complaints and the participation of witnesses, "we cannot conclude, however, that this interest is sufficiently compelling to justify the infringement on free speech."  127 S.W. 3d at 736 (citing 435 U.S. at 835, 841).  "The interest of promoting meritorious complaints and assistance in investigations could be advanced by permitting and encouraging confidentiality, not requiring it." *Id. (citing* Doe v. Supreme Court of Florida, 734 F.Supp. at 985).

Because the Oversight Committee cannot meet its burden of proving that the gag rule of Rule VIII serves a compelling state interest, and because the facts of this case as outlined in the verified complaint show that the Oversight Committee expressly denied Plaintiff Wells' request to waive confidentiality, Plaintiff's speech has been unconstitutionally suppressed by the Oversight Committee, in violation of the First Amendment, and Article I, Section 7 of the Louisiana Constitution.

### B.   The Ordinances Impose Unconstitutional Prior Restraints

In addition, the gag rule provision serves as an unconstitutional prior-restraint because Rule VIII provides the defendant Oversight Committee Chair with unbridled discretion in when and whether to issue a public statement, thus allowing Plaintiff to speak about the complaint.  Defendant's conduct based on the gag rule constitutes a prior restraint on Plaintiff Wells' ability to send out subsequent mailers to voters stating information about the complaint filed against him based on his campaign speech.   Nor do the Oversight Committee rules provide any guidelines or objective standards in their decision-making.   Furthermore, the Rules provide no time limits, nor any opportunity for judicial candidates to appeal.  With days left until Plaintiff Wells' primary election for Slidell City Court judge, the irreparable injury to his free speech rights has already occurred.

### C.   The Commit Clause and the Gag Rule are both Unconstitutionally Overbroad.

Pursuant to the overbreadth doctrine, restrictions on speech cannot "sweep unnecessarily broadly and thereby invade the area of protected freedoms." NAACP v. Alabama, 377 U.S. 288, 307 (1964); See also, Schneider, supra, 308 U.S. at 160. "In the First Amendment area government may regulate only with narrow specificity." NAACP v. Button, 371 U.S. 415, 433 (1963).  A regulation is void if it "does not aim specifically at evils within the allowable area of [government] control but . . . sweeps within its ambit other activities that in ordinary circumstances constitute an exercise" of protected rights.  Thornhill v. Alabama, 310 U.S. 88, 97 (1940). See also, City of Houston, supra, 482 U.S. at 458-59; Gooding v. Wilson, infra, 405 U.S. 518 (1972).

While the Oversight Committee has a legitimate governmental interest in maintaining impartiality in judicial elections, its challenged Rules go well beyond this interest and trespass on a

vast amount of protected expression, including judicial candidates' rights to discuss "issues" with voters, and to discuss citizen-complaints to the Oversight Committee if the candidate deems such information relevant to voters.

There is no justification for these speech restrictions of the Oversight Committee.  It is uniformly recognized that speech cannot be restricted because of the emotive impact of a communication on its audience.  For example, in <u>Gooding v. Wilson</u>, 405 U.S. 518, 527 (1972), a Georgia statute was held unconstitutionally overbroad because it made it "a breach of the peace merely to speak words offensive to some who hear them, and so swept too broadly."  "In almost every instance it is not acceptable for the state to prevent a speaker from exercising his constitutional rights because of the reaction to him by others." <u>Beckerman v. City of Tupelo, Miss.</u>, 664 F.2d 502, 509 (5th Cir. 1981).  <em>See also</em>, <u>O'Conner v. Donaldson</u>, 422 U.S. 563, 575 (1975) ("mere public intolerance or animosity cannot constitutionally justify deprivation of a person's physical liberty").

The Supreme Court has held that the government may not "impose special prohibitions on those speakers who express views on disfavored subjects" or on the basis of "hostility—or favoritism—towards the underlying message." <u>R.A.V. v. City of St. Paul, Minn.</u>, 505 U.S. 377, 386 (1992).  <em>See also</em>, <u>Lamb's Chapel v. Center Moriches Union Free School Dist.</u>, 508 U.S. 384 (1993) ("The principle that has emerged from our cases 'is that the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others'"); <u>Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent</u>, 466 U.S. 789, 804 (1984). The Supreme Court has been quite clear that, if speech is offensive and emotionally unsettling, "that consequence <em>is a reason for according it</em> constitutional protection." <u>Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.</u>, 501 U.S. 105 (1991).  <em>See also</em>, <u>Hustler Magazine</u>

v. Falwell, 485 U.S. 46, 55 (1988) ("[T]he fact that society may find speech offensive is not a sufficient reason for suppressing it. Indeed, if it is the speaker's opinion that gives offense, that consequence is a reason for according it constitutional protection. For it is a central tenet of the First Amendment that the government must remain neutral in the marketplace of ideas.")

The Constitutiona does not allow a third party who disagrees with Plaintiff Well's campaign speech to harass him by filing a complaint with the Oversight Committee. And, the tremendous overbreadth of the challenged provisions is striking. No governmental body has the authority to prohibit the fundamental rights of candidates, whether judicial or legislative, to speak on important issues of the day.   On their face, the challenged Louisiana commit clause and gag rule are both constitutionally bankrupt.

### D.   The Commit Clause and the Gag Rule are both Unconstitutionally Vague.

The challenged provisions are also unconstitutional because, *inter alia*, they employ terms that are so "vague that men of common intelligence must necessarily guess at [their] meaning and differ as to [their] application." Connally v. General Constr. Co., 269 U.S. 385, 391 (1926). Canon 7's prohibition on judicial candidates to "commit or appear to commit to . . . issues that may come before his court" do not "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). While all regulations must be reasonably clear, laws which restrict free speech, such as the provisions in question, must satisfy "a more stringent vagueness test," Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489, 499 (1982) (footnote omitted). Any regulation governing a speaker's access to a forum must contain "narrow, objective, and definite standards" to guide a governmental authority,

15

so that such regulations do not operate as a prior restraint that may result in censorship."
Shuttlesworth, *supra*, 394 U.S. at 151.

In the present case a judicial candidate can never know with any degree of confidence, for example, whether someone will deem his or her expression an "issue," that he is proscribed from discussing. That essential term is not defined in Canon 7. These ambiguities clearly result in the kind of self-censorship the Supreme Court has warned against. *See, e.g.*, City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 758 (1988) (vague regulations cause self-censorship).

The challenged provisions lack necessary objective standards and key definitions to guide candidates for judicial office. The determination of what is or is not acceptable speech is thus made on the basis of the subjective reaction of the government officials. Finally, as noted above, the gag rule of Rule VIII fails to place "definite limitations on the time within which" the Oversight Committee must issue a decision and grant or deny the permit. The failure to include such time restraints in the Rules is absolutely fatal because it constitutes a form of "unbridled discretion." Id. at 226-228; Hague, *supra*, 59 S.Ct at 516.

## II.   The Plaintiff is Suffering Irreparable Injury

"It is undisputed that the loss of First Amendment freedoms for even minimal periods of time unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). The Defendant has restricted and chilled Plaintiff Wells' rights to free speech with voters about the politically-motivated complaint filed against him, and Plaintiff has been concerned about whether he should censor his own speech for fear of violating the commit clause and being subject to public reprimand or disciplinary sanctions. Verified Complaint at ¶ 24-26. Accordingly, the irreparable

16

harm prong of the preliminary injunction test is satisfied. *See also* <u>Memphis Community School Dist.</u> <u>v. Stachura</u>, 477 U.S. 299 (1986) (holding monetary recovery cannot compensate for injury to intangible rights guaranteed by the Constitution).

**III.   The Injury to Plaintiffs Outweighs the Threatened Harm the Injunction May Do to Defendants.**

Granting Plaintiff's requested injunctive relief—which will essentially command Defendant to comport with the requirements of the First and Fourteenth Amendments—will cause no harm to Defendant. Defendant can assert no compelling governmental interest that can outweigh the free speech rights at stake in this case. See <u>Tinker</u>. Defendant will suffer no legally cognizable harm by being enjoined from continuing his unconstitutional deprivation. Furthermore, absent a TRO/preliminary injunction, Plaintiff Wells and other judicial candidates will suffer continued irreparable injury to constitutionally guaranteed freedom of speech.

**IV.   Granting a Preliminary Injunction Will Not Disserve the Public Interest.**

Obviously, the public interest would be well served by the elimination, rather than the continuation, of overt suppression against constitutionally protected expression. No public interest is served by judicial countenance of an unconstitutional prohibition on speech.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff John Wells' Application for TRO/Preliminary Injunction should be granted. The challenged Commit Clause and Gag Rule should also both be declared unconstitutional on their face and/or as applied to Plaintiff. Respectfully submitted this 14th day of September, 2004.

Attorneys for Plaintiff,

17

By: _____

Dorinda C. Bordlee
Louisiana State Bar No. 20115
LAW OFFICES OF DORINDA C. BORDLEE
3312 Cleary Avenue
Metairie, LA 70002
Phone: (504) 454-8760
Facsimile: (504) 454-7175


J. Michael Johnson
Louisiana State Bar No. 26059
ALLIANCE DEFENSE FUND
Southeast Regional Service Center
401 Market Street, Ste. 900
Shreveport, LA 71101
Phone: (318) 459-2239
Facsimile: (318) 222-0458


## CERTIFICATE OF SERVICE

I hereby certify that on this the 17th day of September, 2004, the foregoing document was served, via FAX and first class mail, upon the following counsel for Defendant:


Tracy Buccino
Louisiana Supreme Court, Judicial Administrator's Office
Louisiana Judicial Campaign Oversight Committee
400 Royal Street, Suite 1190
New Orleans, LA 70130-8101
*Attorney for Harry S. Hardin, III, Chair, LA Jud. Campaign Oversight Committee*

_____
Dorinda C. Bordlee

18

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

JOHN B. WELLS                                      CIVIL ACTION No.

       Plaintiff,                                 SECTION

v.                                                 JUDGE

HARRY S. HARDIN, III., Chair, Lousiana             MAGISTRATE NO.
Judicial Campaign Oversight Committee,
                                                   MAGISTRATE
       Defendant.

## DECLARATION

      I, JOHN B. WELLS, declare that I am the plaintiff in the above-entitled proceeding,
and that I have personal knowledge of the information set forth in this statement:

1. I am a resident of Slidell, Louisiana and a candidate for Judge of the City Court of
   Slidell in the election scheduled for September 18, 2004.

2. I began practicing law in Louisiana in 1995 after retiring as a Commander (Surface
   Warfare Officer) following twenty-two years active duty in the United States Navy
   (1972-94).

3. I graduated from Duquesne Law School in 1994, and in addition to being a
   member of the bar of the Supreme Court of Louisiana, I am also a member of the
   bar of the United States Supreme Court, the Supreme Court of the
   Commonwealth of Pennsylvania, the United States Courts of Appeal for the Fifth
   and Federal Circuits and the District of Columbia, the United States Court of

1

Federal Claims, the United States Court of Veterans Appeals, and many federal district court in Louisiana, Texas, Mississippi, and Pennsylvania.

4. In furtherance of my campaign for Slidell City Court Judge, I caused to be created a brochure to be mailed to voters in Wards 8 and 9 to inform voters of my values and viewpoints.

5. Prior to finalizing this brochure, I discussed it with Nancy Rix of the Louisiana Judicial Campaign Oversight Committee ("Campaign Oversight Committee"). Ms. Rix made one suggestion which was incorporated in the final version.

6. Among other statements, the first paragraph of my mailing brochure (attached as Exhibit A) states as follows:

Active in the World Wide Marriage Encounter, a ministry promoting traditional marriage, John Wells knows that strong marriages build strong families.  He is the only City Court Judge candidate to publicly declare his unwavering support for the Defense of Marriage amendment.  And he's proud to do it.  Pro-life and pro-marriage, his values are our values.

7. On the afternoon of Friday, September 10, 2004, I received a telephone call from staff attorney Tracy Buccino of the Louisiana Judicial Campaign Oversight Committee informing me that a complaint had been filed against me alleging that the "pro-life" and "pro-marriage" statements I had made in my flyer had violated Code of Judicial Conduct Canon 7B(1)(d)(ii).

8.  The Oversight Committee immediately emailed to me a copy of the complaint filed against me by Andra Henry, whom I know to be a fervent supporter and cousin of d'Andrea McMooain Chatman, one of my opponents for Slidell City Court Judge. (See Exhibit B.)

9. Ms. Henry's complaint states that "this candidate will not be impartial or fair" because my support for the Defense of Marriage amendment "shows a strong bias against "divorced parents and gay & lesbian parents."  She also states that "one

could not expect a favorable decision" in cases involving minors seeking abortion through judicial-bypass, and that "the candidate would be bias against unwed mothers & unwed minor parents."

10. While I believe that it important and essential that voters know my values and viewpoints, if elected I would impartially apply the law to the facts before me.

11. The cover letter emailed to me from the Oversight Committee about my right to respond states as follows:

> Please note that this complaint, and your response, are confidential until such time as the Committee, by a vote of at least two-thirds of its members, has determined clear and convincing evidence exists that a violation has occurred. (emphasis added). (See Exhibit C).

12. It was and is my belief that Ms. Henry's complaint was made for an improper political purpose of harassment and is at best a poorly disguised attempt to divert my energies from the campaign and deprive me of my free speech rights.

13. Pursuant to the phone number in the Oversight Committee letter, I called attorney Tracy Buccino at the Oversight Committee to request that I be allowed to waive confidentiality based on my belief that my right to speak about both my message and the fact that a complaint was filed against me due to the values and viewpoints reflected in my speech is highly relevant to the voters of Slidell so that they can have full information on the values and viewpoints of the various candidates and those working closely with their campaigns.

14. Tracy Buccino told me that she would read the rules and make some phone calls regarding my request to waive confidentiality. She returned my call and told me that she had checked with some committee members and that the rules do not

provide for waiver of confidentiality, and that I could only discuss the matter with high-level campaign staff and legal counsel.

15. Since Friday evening, September 10, 2004, I have become concerned that my campaign speech may result in sanctions or public statements that could be imposed, and that ultimately the Louisiana Supreme Court could use Canon 7 to impose fines, penalties, suspension or other discipline against me for my speech.

16. Although I believe that I am completely within my rights to speak about my convictions and to disclose to the voters that a complaint has been filed against me based on my speech, the communications from the Oversight Committee have made me have left me uncertain about the allowable speech I can make during the remainder of the campaign.

17. My election is this Saturday, September 18, 2004.

18. Notwithstanding the outcome of the election this Saturday, I will consider running for judicial office again in the future.

JOHN B. WELLS

SWORN TO and SUBSCRIBED before me by John B. Wells on September 13, 2004.

Janice C. Wells
Notary Public in and for the State of Louisiana
#54928