UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHN B. WELLS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 04-2585** |
| **HARRY S. HARDIN, III, Chair, Louisiana Judicial Campaign Oversight Committee, HUGH M. COLLINS, PH.D., Chief Executive Officer, Judiciary Commission of Louisiana, JAMES L. PATE, Chair, Louisiana Attorney Disciplinary Board, in their official capacities** | **SECTION "N" (5)** |

## ORDER AND REASONS

Before the Court is the Motion for Reconsideration (Rec. Doc. No. 50) filed by Plaintiff, John B. Wells. Defendants have opposed Plaintiff's motion. For the reasons that follow, Plaintiff's motion is **DENIED**.

### I. BACKGROUND

On January 25, 2006, this Court entered an Order granting in part and denying in part the Motion to Dismiss Second Amending Complaint filed by several of the defendants in this matter. In its Order, the Court dismissed Plaintiff's claim regarding the constitutionality of Canon 7(b)(1)(d)(ii) of the Louisiana Code of Judicial Conduct (the "Commit Clause"), finding that Plaintiff lacks standing to assert such claim because "there is no ongoing injury to Wells, and any threat of future injury is neither imminent nor likely." In requesting that the Court reconsider this portion of its ruling, Plaintiff urges that "the very existence of the Commit Clause chills speech because it facilitates political harassment of Plaintiff by unscrupulous political opponents who can drag the Oversight Committee into requiring Plaintiff's answer to baseless complaints under penalty of law."

### II. LAW AND ANALYSIS

A district court has substantial discretion to grant or deny a motion based on Rule 59(e) of the Federal Rules of Civil Procedure. *See Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993); *Johnson v. Tuff-N-Rumble Management, Inc.*, No. CIV.A.99-1374, 2000 WL 1808486, at *2 (E.D. La. Dec. 8, 2000). However, the reconsideration of a prior order "is an extraordinary remedy which should be used only sparingly." *Johnson*, 2000 WL 1808486 at *2. Generally, this Court has held that a movant must establish at least one of the following four criteria in order to be successful on a Rule 59(e) motion: (1) the motion is essential to correct a manifest error of law or fact; (2) the party filing the motion has newly discovered or previously unavailable evidence to present to the Court; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified due to an intervening change in pertinent law. *See Johnson*, 2000 WL 1808486 at *2; *Fidelity & Deposit Co. v. Omni Bank*, No. CIV.A.99-1167, 1999 WL 970526, at *3 (E.D. La. Oct. 21, 1999); *Jupiter v. BellSouth Telecomms., Inc.*, No. CIV.A.99-628, 1999 WL 796218, at *1 (E.D. La. Oct. 5, 1999); *Burma Navigation Corp. v. Seahorse*, No. CIV.A.94-795, 1998 WL 781587, at *1 (E.D. La. Nov. 3, 1998).

Upon reviewing the submissions of the parties, the Court finds that Plaintiff has failed to satisfy any of the above-listed criteria. In his motion, Plaintiff directs the Court's attention to the following district court cases: *North Dakota Family Alliance, Inc. v. Bader*, 361 F. Supp. 2d 1021 (D.N.D. 2005); *Family Trust Found'n of Ky. v. Wolnitzek*, 345 F. Supp. 2d 672 (E.D. Ky. 2004); and *Alaska Right to Life Political Action Comm. v. Feldman*, 380 F. Supp. 2d 1080 (D. Ak. 2005). In regard to these cases, Plaintiff states that "[t]he frequency of ... federal court opinions striking down Commit Clauses ... lends persuasive authority to this Court reconsidering its order dismissing the Commit Clause and instead reserving judgment until the issue has been fully briefed on cross-motions for summary judgment." The Court notes that whether other federal courts have found

similar clauses to the one at issue unconstitutional is of no moment insofar as the Court's Order of dismissal is concerned.  Plaintiff's claim was dismissed because the Court found that, based upon the specific facts set forth in this case, Plaintiff has not demonstrated that he has standing to bring a claim with respect to the Commit Clause.  The Court stresses that its ruling has no bearing upon, and is in no way indicative of, whether a plaintiff bringing a Commit Clause claim under appropriate factual circumstances could or should prevail on such a claim.

With respect to the cases cited by Plaintiff, the Court further notes that, as to the issue of standing, those cases are distinguishable from the case *sub judice*.  In each of the cases cited by Plaintiff, the claimants were organizations and/or individuals who wished to receive information, in response to surveys sent out, regarding the views of different candidates running for office in particular elections.  *See North Dakota Family Alliance, Inc.*, 361 F. Supp. 2d at 1025-29; *Family Trust Found'n of Ky.,* 345 F. Supp. 2d at 677-81; *Alaska Right to Life Political Action Comm.*, 380 F. Supp. 2d at 1082-84.  Many of the candidates would not respond at all or in full to the surveys, however, because they feared that by doing so they would violate ethical canons similar to the one at issue in the case presently before the Court.  *Id*.  The Court finds that the plaintiffs in those cases alleged specific harms that they suffered as a result of the ethical canons at issue–namely, that they did not receive valuable and deserved information regarding candidates running for office because of the candidates' stated purpose of avoiding violating the terms of the clauses at issue.  *See id*.  Conversely, as the Court previously stated in its Order dismissing Plaintiff's Commit Clause claim, Plaintiff has not alleged any real harm that he has suffered as a result of the application of the Commit Clause.  He has not been restrained from communicating his "pro-life" and "pro-marriage" views.   Indeed, as he himself admits, he distributed much literature proclaiming such views.  Further, when complaints were filed against him for such actions, the Oversight Committee twice

properly absolved him of any liability.  As to complaints filed against claimant under the Commit Clause, the Oversight Committee has thus far acted in accordance with Supreme Court precedent, including the Court's holding in *Repulican Party of Minnesota v. White*, 536 U.S. 765 (2002).[1]  The Court has no reason to suspect that it will not do so with respect to any similar complaints filed against plaintiff in future elections in which he may run.   Further, although plaintiff contends that he has and will suffer harm in the future, should he run for election again, because the very existence of the Commit Clause chills political speech, the Court finds that such alleged harm is unspecific and conjectural at best.  Plaintiff has not identified any specific instance in which he did not state his "pro-marriage" and "pro-life" views in response to questions from members of the public or otherwise.  Nor has he stated any specific harm that he is likely to suffer in the future as a result of the Commit Clause.

### III.  CONCLUSION

Accordingly, for all of the reasons stated herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Reconsideration is **DENIED**.

New Orleans, Louisiana, this __26th__ day of May, 2006.

**Kurt D. Engelhardt**
**United States District Judge**

---

[1] In *Republican Party of Minnesota*, the Supreme Court found a clause in the Minnesota Code of Judicial Conduct providing that a "candidate for a judicial office, including an incumbent judge ... [shall not] announce his or her views on disputed legal or political issues" to be unconstitutional.  *See* 536 U.S. at 788.